UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED STATES OF AMERICA,                          :
                                                   :          16 Cr. 500 (RMB)
           - against -                             :
                                                   :          **DECISION & ORDER**
CESAR SANCHEZ,                                     :
                           Defendant.              :
-----------------------------------------------------------------x

This Decision & Order addresses Defendant Cesar Sanchez's motion, dated December 14, 2020 and filed pro se, seeking reconsideration of the Court's July 7, 2020 Decision & Order denying him compassionate release ("July 7, 2020 Decision"). For the reasons stated below, Sanchez's motion for reconsideration is respectfully denied.[1]

### I. Background

On October 2, 2018, Cesar Sanchez pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine. See Oct. 2, 2018 Plea Hr'g. Tr. at 8:7-10. Sanchez's Sentencing Guidelines range was 70 to 87 months; his offense level was 23; and his criminal history category was IV. See Jan. 23, 2019 Sentencing Tr. at 21:3-9. On January 23, 2019, the Court sentenced Sanchez to 68 months' imprisonment followed by 5 years of supervised release. Jan. 23, 2019 Judgment.

Sanchez is incarcerated in the low-security facility at FCI Fort Dix in New Jersey. See Gov't Reconsideration Opp. at 2; see also FCI Fort Dix, BOP, https://www.bop.gov/locations/institutions/ftd/. His projected release date is February 21, 2023. See Gov't Reconsideration Opp. at 2. As of January 24, 2021, Sanchez had served 22 months of his 68-month sentence (32%). Id.

**Motion for Reconsideration**

As noted above, on December 14, 2020, Sanchez filed a pro se "Emergency Motion for Reconsideration" ("Motion for Reconsideration") of the Court's July 7, 2020 Decision denying his

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

1


motion for compassionate release. Sanchez argues, among other things, that: (i) the Centers for Disease Control and Prevention ("CDC") "recently held that obese individuals are vulnerable to the COVID-19 virus" and "Sanchez[] [is] obes[e]"; and (ii) "in two months the number of inmates infected with coronavirus [at FCI Fort Dix] ha[s] tripled." Def. Reconsideration Mot. at 2, 5, 15.

On January 13, 2021, the Government filed its opposition, arguing that: (i) Sanchez "present[s] an extraordinary and compelling circumstance because his obesity places him at increased risk of severe illness from COVID-19." The Government also advises that Sanchez has recently contracted COVID-19 and that "[he] is in isolation and monitored daily by BOP health staff"; and (ii) Sanchez's motion for compassionate release was appropriately denied by the Court on July 7, 2020 because, among other things, he is a "danger to the community" and the 18 U.S.C. § 3553(a) factors "weigh heavily against" compassionate release. Gov't Reconsideration Opp. at 2, 3. The Government also submits Sanchez's medical records as Exhibit A which reflect his medical examinations at FCI Fort Dix between January 4, 2021 and January 11, 2021. See BOP Medical Records Ex. A.

II.     **Legal Standard**

Where a "[d]efendant is proceeding *pro se*, his submissions are 'construed liberally and interpreted to raise the strongest arguments that they suggest.'" *United States v. Moore*, 2020 WL 3428107, at *1 (S.D.N.Y. June 23, 2020) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

"A motion for reconsideration 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Posner*, 2020 WL 7022500, at *1 (S.D.N.Y. Nov. 30, 2020) (quoting *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

"[T]he Section 3553(a) factors and the danger [a defendant] poses to the community [can] override **any** extraordinary and compelling reasons justifying his release." *United States v. Serrano*, 2020 WL 5259571, at *4 (S.D.N.Y. Sept. 3, 2020) (emphasis added); *see also United States v. Roney*, 2020 WL 6387844, at *2 (2d Cir. Nov. 2, 2020) ("We need not decide whether [defendant] has proffered an

extraordinary and compelling reason that warrants his release under 18 U.S.C. § 3582(c)(1)(A)(i) because . . . release is nevertheless unwarranted upon consideration of the § 3553(a) factors."); *United States v. Lika*, 2020 WL 2766049, at *3 (S.D.N.Y. May 28, 2020) ("[T]he § 3553(a) factors and the danger Defendant presents to the community outweigh the risks [presented by the pandemic]").

### III. Findings

The Court's findings are as follows:

1. BOP medical records show that Sanchez has a body mass index ("BMI") of approximately 38.2 kg/m$^2$. See Gov't Reconsideration Opp. at 3; *see also United States v. Sanchez*, 2020 WL 3790546, at *2 (S.D.N.Y. July 7, 2020). A BMI of "30.0 or higher . . . falls within the obese range." See Defining Adult Obesity, CDC, https://www.cdc.gov/obesity/adult/defining.html. In the Motion for Reconsideration, Sanchez claims that the CDC "recently held that obese individuals are vulnerable to the COVID-19 virus." Def. Reconsideration Mot. at 5.

2. At the time of the Court's July 7, 2020 Decision, CDC guidance already provided that having "a BMI of 30 or above[] increases your risk of severe illness from COVID-19." *Sanchez*, 2020 WL 3790546, at *2 (citation and alterations omitted). The Court considered the CDC guidance and Sanchez's obesity in the July 7, 2020 Decision but nevertheless concluded that "[a]lthough . . . Sanchez has a medical condition that the CDC has recognized may present risk of severe complications from COVID-19 . . . namely obesity . . . his BOP medical records show that the BOP is managing his conditions . . . ." *Id.* at *3 (citation and alterations omitted).

3. Current CDC guidance today is substantially the same as it was in July 2020 with respect to Sanchez's obesity, i.e., his BMI of 38.2 kg/m$^2$ was said by the CDC to increase Sanchez's risk of severe illness from COVID-19. Current CDC guidance is that: "Having obesity, defined as a body mass index (BMI) between 30 kg/m$^2$ and <40 kg/m$^2$ . . . increases your risk of severe illness from COVID-19." See People with Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Dec. 29, 2020).

4. As noted, Sanchez is currently infected with COVID-19. "He reports feeling shortness of breath, but denies various other symptoms of the virus." Gov't Reconsideration Opp. at 2. According to the Government, "Sanchez is in isolation and monitored daily by BOP health staff." Id. Sanchez's medical records reflect that medical personnel take his "temperature," "pulse," "blood pressure," and oxygen-saturation levels on a daily basis; and that they monitor him daily for symptoms, including: "[c]ough[ing], shortness of breath [], fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, [and] nausea or vomiting." See BOP Medical Records Ex. A at 1-9.

5. Sanchez appears to be receiving appropriate medical treatment at FCI Fort Dix. In *United States v. Daugerdas*, 2020 WL 4931988 (S.D.N.Y. Aug. 18, 2020), the court (Pauley, D.J.) stated: "[Defendant's] BOP medical records indicate that he is receiving adequate treatment for his COVID-19 infection. . . . this Court concludes that [defendant's] diagnosis does not warrant reconsideration of the [initial] Order." Id. at *3; *see also United States v. Bogdanoff*, 459 F. Supp. 3d 653, 658 (E.D. Pa. 2020) ("BOP officials are monitoring [defendant] daily [and] taking his temperature each day . . . [the court] cannot yet conclude that he [] would be made safer by his immediate [release]").

6. According to the Government, "[r]eleasing Sanchez now, while he has an active case of COVID-19, would [] endanger the community by exposing others to the virus. Sanchez is in isolation, and he should remain there to the extent possible to avoid infecting others." See Gov't Reconsideration Opp. at 4. This is in line with other cases which have concluded that: "Any release other than one for emergency medical care would have to await Defendant's recovery . . . . release while he is infectious would risk the public health." *United States v. Castelucci*, 2020 WL 6868673, at *1 n.2 (S.D.N.Y. Nov. 22, 2020); *United States v. Davis*, 2020 WL 2395977, at *2 (C.D. Ill. May 12, 2020) ("[T]he Court finds that releasing [defendant] into the community while he has COVID-19 is a danger to the safety of the community.").

7. As of January 24, 2021, there were 73 inmates at FCI Fort Dix with active COVID-19 cases out of an inmate population of 2,729. See COVID-19 Update, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 24, 2021).

IV.  **Analysis**

The Court is not persuaded that Sanchez has met the high bar for reconsideration because Sanchez has failed to "point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion [previously] reached by the court." *Posner*, 2020 WL 7022500, at *1. But even if he had met that burden, the Court would deny Sanchez's request for early release because the Court has found in its July 7, 2020 Decision that Sanchez poses a danger to the community and the 18 U.S.C. § 3553(a) factors weigh against granting Sanchez compassionate release. *United States v. Roney*, --- F. App'x ----, 2020 WL 6387844, at *2 (2d Cir. Nov. 2, 2020) ("We need not decide whether [defendant] has proffered an extraordinary and compelling reason that warrants his release under 18 U.S.C. § 3582(c)(1)(A)(i) because . . . release is nevertheless unwarranted upon consideration of the § 3553(a) factors.").

**Dangerousness**

The Court's "dangerousness" conclusion is based upon the following:

**First**, the underlying conduct that led to Sanchez's incarceration endangered the community. Sanchez participated in "a significant drug trafficking organization, based in the New York City area and Puerto Rico that imported and distributed dozens of kilograms of cocaine in the New York City area." See PSR ¶¶ 22, 43 & p.23; see also Superseding Indictment at 1. Sanchez was "directly involved in the distribution of multiple packages of cocaine, including coordinating the receipt and transport of packages sent from Puerto Rico to the New York area. Sanchez was also involved in coordinating narcotics trafficking in a 2015 drug deal in Philadelphia." PSR ¶ 43. "The [drug trafficking] [o]rganization's activities—and the defendant's conduct—contributed to dangerous and damaging effects of narcotics upon the community." See Gov't Sentencing Submission at 3.

At sentencing, Sanchez's defense counsel acknowledged that "[Sanchez's] deeds were substantial in this organization." See Jan. 23, 2019 Sentencing Tr. at 13:3-4. And, the Court concluded, in denying Sanchez's May 2020 motion for compassionate release the following: "The underlying conduct that led to his incarceration gravely endangered the community and reflects an individual who is accustomed to

5

distributing controlled and highly addictive substances in his community." *Sanchez*, 2020 WL 3790546, at *3 (citation and alterations omitted). Similarly, in *United States v. Martinez*, 2020 WL 4677433 (S.D.N.Y. Aug. 12, 2020), the court found that a defendant who was involved in a conspiracy that "traffick[ed] more than 11 kilograms of cocaine . . . undoubtedly harmed individuals in his community and the community more generally." *Id.* at *2 (citation omitted).

**Second**, Sanchez's criminal history category of IV reflects his "lengthy criminal record." See Gov't Reconsideration Opp. at 3. Among other things, Sanchez has four prior convictions for drug offenses, including the following: (i) second-degree criminal possession of a controlled substance (for which he was sentenced to three years' imprisonment); (ii) conspiracy to possess with intent to distribute MDMA (for which he was sentenced to 32 months' imprisonment); (iii) possession with intent to distribute ecstasy while on active duty aboard a U.S. Navy ship (for which he was sentenced by the U.S. Navy to 8 months' confinement); and (iv) possession of marijuana. See PSR ¶¶ 60-63.

In *United States v. Mazyck*, 2020 WL 5517540 (S.D.N.Y. Sept. 12, 2020), the court denied compassionate release of a defendant who had been convicted of "distribut[ing] large quantities of crack cocaine." *Id.* at *6. The court found that: "Given [defendant's] record, . . . [defendant] has not met his burden of demonstrating that his release would not present a danger to the community." *Id.*

**Third**, disciplinary records from the BOP show that Sanchez "committed a serious violation by 'possessing a hazardous tool' in February 2020." See Gov't Reconsideration Opp. at 3. In *United States v. Moye*, 2020 WL 6273905 (S.D.N.Y. Oct. 26, 2020), the court concluded that: "[E]ven after [the defendant's] sentence was imposed, Defendant was disciplined for possessing a 'hazardous tool' while in prison. Given these facts, this Court cannot conclude that Defendant is not a danger to the community." *Id.* at *2 (citation omitted).[2]

---

[2] The Court points out that it has similarly denied the compassionate release application of Sanchez's co-defendant, Miguel Torres, who, along with Sanchez, was involved in the New York City and Puerto Rico based "drug trafficking organization [] that imported and distributed dozens of kilograms of cocaine in the New York City area." PSR ¶¶ 21-22; *see United States v. Torres*, 2020 WL 3959668 (S.D.N.Y. July 11, 2020).

**The 18 U.S.C. § 3553(a) Factors Weigh Against Sanchez's Release**

The Court's conclusion regarding the 18 U.S.C. § 3553(a) factors is based upon the following:

**First**, by reducing Sanchez's sentence, the Court would not be reflecting the seriousness of his offense; nor would it be providing just punishment for the offense. At sentencing, the Court stated that the 68 month sentence was appropriate "having considered the nature and the circumstances of the offense, which is a very serious offense, helping to distribute drugs [and] cocaine . . . I think this sentence reflects the seriousness of the offense . . . and I believe it is a just punishment." See Jan. 23, 2019 Sentencing Tr. at 23:21-24:6.

In *United States v. Leon*, 2020 WL 7093445 (S.D.N.Y. Dec. 4, 2020), the court denied the compassionate release motion of a defendant who "directly participated in the distribution of hundreds of thousands of dollars' worth of [] cocaine, and [other drugs]—drugs that actually kill people every day." *Id.* at *1. The court found that: "nothing has changed to warrant cutting [defendant's] sentence by more than two-thirds . . . The serious nature of [defendant's] offense warranted a lengthy prison sentence at the time it was imposed . . . . and provide[d] just punishment for the offense." *Id.* at *2.

And, in *United States v. Davis*, 2020 WL 4573029 (S.D.N.Y. Aug. 7, 2020), the court determined that: "[Defendant] participated in a massive drug-trafficking organization that distributed [] crack cocaine and powder cocaine throughout New York City." *Id.* at *2. "Given the seriousness of [defendant's] conduct . . . . the Court cannot conclude that the section 3553(a) factors would support a reduction of [defendant's] below-Guidelines sentence." *Id.*; *see also United States v. Colon*, 2020 WL 4496761, at *1-2 (S.D.N.Y. Aug. 4, 2020) ("[Defendant] pleaded guilty to [participating] . . . in a massive narcotics conspiracy [involving] cocaine—a highly addictive drug that destroys lives, families, and communities. Reducing his sentence [] would hardly reflect the seriousness of that offense.").

**Second**, as already noted, Sanchez has a significant criminal history. He was convicted of four drug offenses between 2000 and 2014. See PSR ¶¶ 60-63.[3] According to the Probation Department's

---

[3] He was also charged but **not** convicted of several other offenses. See PSR ¶¶ 67-69.

Presentence Investigation Report dated December 20, 2018: "It appears as though Mr. Sanchez's criminal history demonstrates that he is unable to live in a community-based setting without breaking the law. Clearly, prior lenient sentences have not deterred him or his involvement in criminal activities, and it appears that his crimes are escalating in nature. Taking into account . . . Mr. Sanchez's lengthy criminal history, we believe that a significant term of imprisonment is warranted in this case." See Jan. 23, 2019 Sentencing Tr. at 7:20-8:4. Releasing Sanchez now would not promote respect for the law nor would it likely afford specific or general deterrence to criminal conduct.

In *United States v. Francis*, 2020 WL 7247180 (S.D.N.Y. Dec. 9, 2020), the court determined that: "[The] offense . . . was [defendant's] sixth criminal conviction . . . and his fifth drug felony." *Id.* at *2. The court concluded that: "releasing Defendant now . . . . would not sufficiently address [] his history of repeated drug offenses . . . . It would not address Defendant's lack of respect for the law or suffice to . . . [deter defendant] from further crimes[], unfortunately a distinct possibility given the Defendant's record." *Id.*

**Third**, a sentence reduction to time served -- or to any lesser term of reduction below 68 months -- would not sufficiently protect the public from further crimes. *See United States v. Marley*, 2020 WL 7768406, at *3 (S.D.N.Y. Dec. 30, 2020) ("Reducing [defendant's] sentence to time served would [] result in an exceptionally large sentence reduction, with [defendant] serving only approximately one-third of the originally-imposed sentence. . . . [It] is woefully inadequate . . . to protect the public from [defendant's] further criminal conduct.").

The Court acknowledges and commends Sanchez's efforts at utilizing resources available to him, including his enrollment in the Residential Drug Abuse Program, and his "successful[] complet[ion] of several recidivism [and] education [courses], as well as life skills training classes." See Def. Reconsideration Mot. at 10-11, 15. The Court encourages Sanchez to continue to pursue such programs while incarcerated and while on supervised release. *See United States v. Carter*, 2020 WL 3051357, at *3 n.7 (S.D.N.Y. June 8, 2020).

## V. **Conclusion & Order**

For the reasons set forth above, Defendant's Motion for Reconsideration [Dck. # 478] is denied.

The Government's request [Dck. #481] to file Exhibit A (BOP medical records) under seal is granted.

*United States v. Daugerdas*, 2020 WL 2097653, at *3 n.2 (S.D.N.Y. May 1, 2020).

Dated:  New York, New York
January 24, 2021

_____
**RICHARD M. BERMAN, U.S.D.J.**