**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| UNITED STATES OF AMERICA, | : | |
| --- | --- | --- |
| | : | 16 Cr. 500 (RMB) |
| - against - | : | |
| | : | **DECISION & ORDER** |
| CESAR SANCHEZ., | | |
| Defendant. | : | |

------------------------------------------------------------x

This Decision & Order resolves Defendant Cesar Sanchez's third pro se motion for compassionate release, dated January 19, 2021 ("Third Motion"). For the reasons stated below, Mr. Sanchez's Third Motion is respectfully denied.[1]

### I. Background

On October 2, 2018, Sanchez, who at the time was 37 years of age, pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). Plea Hr'g Tr. at 8:7-10. Sanchez's offense level was 23; his criminal history category was IV; and his Sentencing Guidelines range was 70 to 87 months. Sentencing Tr. at 3:11-19. On January 23, 2019, the Court sentenced Sanchez to a below-Guidelines sentence of 68 months' imprisonment, to be followed by 5 years of supervised release. Id. at 21:7-10.

Sanchez is incarcerated at FCI Fort Dix in New Jersey. He has served 26 months or approximately 38% of his 68-month sentence. His projected release date is February 21, 2023. Inmate Database, BOP.

On July 7, 2020, the Court denied Sanchez's first pro se motion for compassionate release, which was dated May 11, 2020. Sanchez had contended that: (i) "[he] suffers from seizure disorders, panic disorders, uncontrolled tics, and a family history of heart related deaths"; and (ii) "[he] is at an extremely high risk of contracting COVID-19 at . . . . FCI Fort Dix [where] there are currently more than fifty (50) inmates infected with COVID-19." First Mot. at 1. In denying Sanchez's first motion, the Court found

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

1

that: (i) "[t]he medical conditions identified by Sanchez -- 'seizure disorders, panic disorders, uncontrolled tics, and a family history of heart related deaths' -- do not on their face put Sanchez at high risk of severe illness from COVID-19"; (ii) "FCI Fort Dix appears to be responding to the COVID-19 pandemic and is not a facility that has seen a massive outbreak of COVID-19"; and (iii) "Sanchez poses a danger to the community [and] . . . . [t]he sentence reduction [] sought by [Sanchez] would fail to satisfy any of the purposes of sentencing." See July 7, 2020 D&O at 3-6 (citation and quotation marks omitted).

On January 24, 2021, the Court denied Sanchez's second pro se motion for compassionate release, which was dated December 14, 2020. Sanchez had contended that: (i) "he is . . . obes[e]" and "[t]he Centers for Disease Control and Prevention [] recently held that obes[e] individuals are vulnerable to the COVID-19 virus"; and (ii) "COVID-19 has bec[o]me widespread [at FCI Fort Dix] [and] . . . he [is] forced to endure [a] high risk of being infected with COVID-19." Second Mot. at 2, 5, 15. In denying Sanchez's second motion, the Court found that: (i) "although Sanchez . . . [is] obes[e], his BOP medical records show that the BOP is managing his conditions"; (ii) "Sanchez [has been] infected with COVID-19" but "[he] appears to be receiving adequate medical treatment at FCI Fort Dix"; and (iii) "Sanchez poses a danger to the community and the 18 U.S.C. § 3553(a) factors weigh against granting [his] compassionate release." Jan. 24, 2021 D&O at 3-4, 5 (citation and alterations omitted).

## II. Sanchez's Third Motion for Compassionate Release

In his Third Motion, Sanchez contends that: (i) "[B]y January 2, 2021 an outbreak of the COVID-19 [virus] beg[a]n to spread through [his] housing unit . . . . [FCI Fort Dix] has failed to protect [the] inmates, and in fact it's [because of] their incompetence that the virus is spreading throughout the prison complex." Third Mot. at 1, 3; (ii) "[On] January 8, 2021 [Sanchez] test[ed] positive for the COVID-19 [virus] [and] . . . . [is] being forced to endure shortness of breath, constant[] d[i]zziness, body aches, fever and sleeplessness." Id. at 1-2; and (iii) "[He has] been placed on the third floor of [his] housing unit [] under lock, without access to medical or correctional staff should [his] conditions worsen." Id. at 2.

On February 3, 2021, the Government filed its opposition to Sanchez's Third Motion. The Government also submitted (at the Court's request) Sanchez's BOP medical records, dated May 7, 2017 to April 27, 2021. The Government counters that: (i) "[G]iven the COVID-19 pandemic [and] certain of Sanchez's health conditions [i.e., his obesity], . . . Sanchez has demonstrated extraordinary and compelling circumstances." Third Gov't Opp. at 2; (ii) "A reduction of [Sanchez's] sentence to approximately 23 months would not nearly suffice to reflect the seriousness of Sanchez's offense, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct." Id. at 3; and (iii) "Sanchez is [] a danger to the safety of . . . the community . . . . [He] has a lengthy criminal record, and disciplinary records show that he committed a serious violation by 'possessing a hazardous tool' in February 2020." Id. (citation and quotation marks omitted).[2]

### III. Legal Standard

"[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (citation omitted).

"Before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies." *See United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020).

"When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Beniquez*, 2021 WL 260225, at *2 (S.D.N.Y. Jan. 26, 2021). "The defendant has the burden to show he is entitled to a reduction." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

---

[2] On May 4, 2021 (*i.e.*, after Sanchez had filed his pro se Third Motion and the Government had filed its opposition), attorney Mehdi Essmidi filed a notice of appearance as defense counsel for Sanchez. To date, Mr. Essmidi has not filed any papers in support of Sanchez's Third Motion.

"[I]n deciding a compassionate release motion . . . [t]he Court [] looks to § 1B1.13 for guidance in the exercise of its discretion." *United States v. Rodriguez*, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020). "The district court has the discretion 'to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring.'" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

"[T]he Section 3553(a) factors and the danger [a defendant] poses to the community override any extraordinary and compelling reasons justifying his release." *United States v. Serrano*, 2020 WL 5259571, at *4 (S.D.N.Y. Sept. 3, 2020); *United States v. Roney*, 833 F. App'x 850 (2d Cir. 2020).

"Where a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *United States v. Wedd*, 2021 WL 1338754, at *2 (S.D.N.Y. Apr. 9, 2021).

"[C]ourts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons [when] . . . [the defendant] refused the COVID-19 vaccine." *United States v. Robinson*, 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021).

## IV. Findings

The Court finds as follows:

1. Sanchez's BOP medical records reflect that he tested positive for COVID-19 on January 4, 2021. See BOP Medical Records Ex. D at 2. FCI Fort Dix medical personnel "placed [him] [in] immediate isolation" and conducted "daily medical assessment[s] . . . . [for] covid-19 symptoms," including "[c]ough[ing], shortness of breath, fatigue, body aches, sore throat, diarrhea, headache, loss of taste or smell, [and] nausea or vomiting." Id. at 7, 13, 38. During these assessments, Sanchez "denie[d] covid-19 symptoms." Id. at 7, 13; see also BOP Medical Records Ex. D at 31 ("No: Cough, Fatigue, Body aches, Sore throat, Diarrhea, Headache, Loss of taste or smell, Nausea or vomiting.").

2. On January 25, 2021, FCI Fort Dix medical personnel determined that Sanchez had recovered from COVID-19. BOP Medical Records Ex. D at 51. Since recovering, he has complained of "back pain, . .

. chest [pain] [and] . . . . headache[s]." Id. at 2. Medical personnel regularly have been monitoring Sanchez's "back pain, . . . chest [pain] [and] . . . . headache[s]," including during physical examinations on February 3, 2021, February 17, 2021, and April 27, 2021, and they have been treating him with "daily [doses of] Acetaminophen." Id. at 1-5, 49, 55.

3. On March 18, 2021, FCI Fort Dix medical personnel offered to administer the Pfizer/BioNTech vaccine to Sanchez. He "[re]fused" vaccination. See BOP Medical Records Ex. D at 54.

4. FCI Fort Dix appears to have been able to gain control of COVID-19. That is, as of May 27, 2021, there were 0 active COVID-19 cases at FCI Fort Dix out of a total inmate population of 2,875. COVID-19 Cases, BOP; *United States v. Dempsey*, 2021 WL 2073350, at *3 (D.D.C. May 24, 2021).

5. As of May 27, 2021, 1,482 FCI Fort Dix inmates had been fully vaccinated. COVID-19 Vaccinations, BOP.

## V. Analysis

### (1) Exhaustion of Administrative Remedies

Sanchez appears to be raising claims in his Third Motion that he did not raise in his First or Second Motions, namely that: (i) "on January 2, 2021 an outbreak of the COVID-19 [virus] beg[a]n"; (ii) since contracting COVID-19, "[he] is being forced to endure . . . constant[] d[i]zziness, body aches, fever and sleeplessness"; and (iii) "[he is] without access to medical [] staff." Third Mot. at 1-3.

Sanchez's new claims appear **not** to have been presented to the Warden of FCI Fort Dix and, therefore, are denied because they have not been exhausted. *See, e.g., United States v. Nwankwo*, 2020 WL 7335287, at *1 (S.D.N.Y. Dec. 14, 2020) (where the court concluded that the defendant was required to exhaust his administrative remedies, including his new claim of a "documented outbreak" of COVID-19).

### (2) No Extraordinary and Compelling Circumstances

Even if Sanchez had exhausted all of his administrative remedies, he has not met his burden of proving extraordinary and compelling circumstances supporting his early release, as follows:

**First**, while Sanchez contracted COVID-19 at FCI Fort Dix during the period January 4, 2021 to January 25, 2021, he also quickly recovered. See BOP Medical Records Ex. D at 2, 51. "Where a defendant has contracted and recovered from coronavirus, courts in this district have declined to find extraordinary and compelling factors favoring release." *United States v. Wedd*, 2021 WL 1338754, at *2 (S.D.N.Y. Apr. 9, 2021). In *United States v. Kosic*, 2021 WL 1026498 (S.D.N.Y. Mar. 17, 2021), the court held that: "[h]aving contracted the virus and recovered, [defendant's] reason for a sentence reduction -- namely, that it is necessary to protect his health -- is significantly less compelling. His risk of reinfection is extremely low. . . . On this record, [defendant] has failed to establish . . . an extraordinary and compelling reason warranting a sentence reduction." *Id.* at *3 (citations and quotation marks omitted).

**Second**, FCI Fort Dix medical personnel offered to administer the Pfizer/BioNTech COVID-19 vaccine to Sanchez in March of 2021. Sanchez "[r]efused" vaccination. See BOP Medical Records Ex. D at 54. "[C]ourts in this district and elsewhere have nearly uniformly denied compassionate release sought for medical reasons [when] . . . the defendant refused the COVID-19 vaccine." *United States v. Robinson*, 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021). In *United States v. King*, 2021 WL 736422 (S.D.N.Y. Feb. 24, 2021), where, as here, "BOP records reveal[ed] that Defendant refused the Pfizer COVID-19 vaccine," the court determined that: "In declining vaccination, Defendant declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction. . . . [The] circumstances are not, in this case, extraordinary and compelling." *Id.* at *2 (citation and alterations omitted).

**Third**, Sanchez's argument that "an outbreak of the COVID-19 [virus]" supports his Third Motion is unpersuasive. For one thing, Sanchez's risk of reinfection "is extremely low." *United States v. Rodriguez-Francisco*, 2021 WL 326974, at *2 (S.D.N.Y. Feb. 1, 2021) ("because [defendant] has already had (and fortunately recovered from) the disease, his risk of reinfection is extremely low"). In addition, there are currently zero COVID-19 cases at FCI Fort Dix, reflecting a significant decrease in cases since Sanchez filed his Third Motion, when there were 120 active cases. *United States v. Marquez*, 2021 WL

200005, at *1 (S.D.N.Y. Jan. 20, 2021). "These facts militate against the conclusion that the BOP has been unable to control the COVID-19 pandemic at . . . FCI Fort Dix." *United States v. Coke*, 2021 WL 1578805, at *2 (S.D.N.Y. Apr. 22, 2021). And, 1,482 FCI Fort Dix inmates had been vaccinated as of May 27, 2021, which should further reduce Sanchez's risk of reinfection. *See United States v. Frame*, 2021 WL 1338822, at *3 (S.D.N.Y. Apr. 8, 2021) ("With fellow inmates now being vaccinated, [defendant's] risk of reinfection is diminishing." (citation and alterations omitted)).

### (3) The § 3553(a) Factors -- Including Danger to the Community -- Weigh Against Compassionate Release

A sentence reduction in Sanchez's case would be inconsistent with the § 3553(a) sentencing factors. As the Court held in its July 7, 2020 and January 24, 2021 decisions denying Sanchez's first and second motions, "'[t]he sentence reduction now sought by [Sanchez] would fail to satisfy any of the purposes of sentencing,' namely 'to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.'" July 7, 2020 D&O at 6 (citation and alterations omitted); Jan. 24, 2021 D&O at 7-8. The Court's conclusion has not changed since it issued its prior two decisions.

**First**, Sanchez's underlying crime counsels against early release. Sanchez participated in "a significant drug trafficking organization, based in the New York City area and Puerto Rico that imported and distributed dozens of kilograms of cocaine [worth] . . . thousands of dollars . . . in the New York City area." See PSR ¶¶ 22, 25; Gov't Sentencing Submission at 2. Sanchez was "directly involved in the distribution of multiple packages of cocaine, including coordinating the receipt and transport of packages sent from Puerto Rico to the New York area." PSR ¶ 43. "The [drug trafficking] [o]rganization's activities -- and the defendant's conduct -- contributed to dangerous and damaging effects of narcotics upon the community." See Gov't Sentencing Submission at 3. To release Sanchez now would not adequately reflect the seriousness of his offense or provide just punishment.

In *United States v. Leon*, 2020 WL 7093445 (S.D.N.Y. Dec. 4, 2020), the court denied the compassionate release motion of a defendant who, like Sanchez, "directly participated in the distribution of hundreds of thousands of dollars' worth of . . . cocaine [] -- drugs that actually kill people every day." *Id.* at *1. The court reasoned that: "To substantially reduce the sentence in light of the current public health crisis would not . . . . reflect the seriousness of the offense [or] . . . provide just punishment." *Id.* at *1-2; *see also United States v. Colon*, 2020 WL 4496761, at *1-2 (S.D.N.Y. Aug. 4, 2020) ("[Defendant] pleaded guilty to [participating] . . . . [in] a massive narcotics conspiracy [involving] . . . cocaine -- a highly addictive drug that destroys lives, families, and communities. Reducing his sentence [] would hardly reflect the seriousness of that offense.").

**Second**, Sanchez has a substantial criminal history. He was convicted of four drug offenses between 2000 and 2014, including: (i) second degree criminal possession of a controlled substance (for which he was sentenced to three years' imprisonment); (ii) conspiracy to possess with intent to distribute MDMA (for which he was sentenced to 32 months' imprisonment); (iii) possession with intent to distribute ecstasy; and (iv) possession of marijuana. See PSR ¶¶ 60-63. He was also arrested for (but not convicted of) simple assault, harassment, and aggravated unlicensed operation of a motor vehicle. Id. ¶¶ 67-69. As the Probation Department found in its Presentence Investigation Report dated November 26, 2018: "[Sanchez's] criminal history demonstrates that [he] is unable to live in any community-based setting without breaking the law." Id. at p. 24. Releasing Sanchez now would not promote respect for the law, afford adequate deterrence to criminal conduct, or protect the public from further crimes.

In *United States v. Francis*, 2020 WL 7247180 (S.D.N.Y. Dec. 9, 2020), the defendant had a criminal history not dissimilar to Sanchez's, which included repeated drug offenses. *Id.* at *2. The court concluded that: "releasing Defendant now . . . would not sufficiently address . . . his history of repeated drug offenses. . . . [It] would insufficiently deter, and . . . . would not address Defendant's lack of respect for the law or suffice to protect the public from further crimes by Defendant, unfortunately a distinct possibility given the Defendant's record." *Id.*; *see also United States v. Hilliard*, 2021 WL 638957, at *2

(S.D.N.Y. Feb. 17, 2021) ("Given [defendant's] . . . lengthy criminal history, to reduce his sentence [] would neither promote respect for the law nor . . . afford adequate deterrence or sufficiently protect the public from further crimes of the defendant.").

**Third**, according to the Government, "disciplinary records from the BOP show that Sanchez committed a serious violation by 'possessing a hazardous tool' in February 2020." See Third Gov't Opp. at 3. Sanchez's conduct while in prison suggests that he would pose a danger to the community if released.

In *United States v. Moye*, 2020 WL 6273905 (S.D.N.Y. Oct. 26, 2020), the court, in denying the defendant's motion for compassionate release, explained that: "even after [the defendant's] sentence was imposed, Defendant was disciplined for possessing a 'hazardous tool' while in prison. Given these facts, this Court cannot conclude that Defendant is not a danger to the community." *Id.* at *2 (citation omitted); *see also United States v. Rosa*, 2020 WL 5774909, at *2 (S.D.N.Y. Sept. 28, 2020) ("Defendant has received several disciplinary sanctions while incarcerated, including for . . . possessing a hazardous tool . . . . the Court finds that Defendant would pose a danger to his community if released.").

## VI.    Conclusion & Order

The Government's request to file Exhibits A-D (BOP medical records) under seal is granted. The Defendant's Third Motion [Dck. # 487] is respectfully denied.

Dated:  New York, New York
        May 27, 2021

_____
**RICHARD M. BERMAN, U.S.D.J.**